IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-02342-WJM-KLM

FRANKIE L. MCCONNELL,

      Plaintiff,

v.

ANDREA CIRBO, and
DEBRA REILLY,

      Defendants.

_____

**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on **Defendants' Motion to Dismiss** [Docket No. 24; Filed January 26, 2012] (the "Motion").  Plaintiff filed a Response in opposition to the Motion on February 21, 2012 [#29], and Defendants filed a Reply on March 5, 2012 [#30].  The Motion is ripe for review.  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1C.3, the Motion is referred to this Court for recommendation [#25].  Having reviewed the entire case file and being sufficiently advised, the Court **RECOMMENDS** that the Motion be **GRANTED IN PART** and **DENIED IN PART**.

## I. Summary of the Case

      Plaintiff, who proceeds *pro se* in this matter, is a state prisoner incarcerated at the Colorado Department of Corrections ("CDOC") La Vista Correctional Facility.  Plaintiff's claims arise from a fall that she allegedly suffered while working in the prison kitchen facility and subsequent alleged lack of medical treatment.  *Compl.*, [#9] at 3.  Although in her Complaint Plaintiff describes wrongs committed by several individuals, she does not clearly

identify all of the legal claims at issue. *See id.* at 4-6. However, Plaintiff states that "[w]ith the combination of unadequate [sic] treatment of my back, and head injuries sustained while engaged in prison work constitution [sic] cruel and unusual punishment which violent [sic] Eighth Amendment." *Id.* at 4. The Court thus construes Plaintiff's claims, all of which relate to her back and head injuries, to allege violations of the Eighth Amendment prohibition against cruel and unusual punishment.

In her first claim, Plaintiff asserts that non-party C/O Trujillo accompanied her to Denver General Hospital ("DGH") after her fall, and he refused Plaintiff's requests to call a nurse to bring a bedpan during the seven and a half hours that Plaintiff remained strapped to a hospital backboard.[1] *Id.* at 4. Plaintiff contends that she suffered an "overwhelming feeling of embarrassment and humiliation," and that leaving her strapped to the backboard "from 10:30 am–6:10 pm" constituted "total negligence by the medical staff." *Id.* In her second claim, Plaintiff alleges that Defendant Reilly, Plaintiff's medical provider, failed to respond to several "kites," or requests for follow-up treatment, and refused to enter Plaintiff's medical condition into CDOC's computer records. *Id.* at 5. In her third claim, Plaintiff asserts that Defendant Cirbo ordered her to work in the "dishroom" where her fall had occurred despite her fear of returning to work in that area, and as a result she "became sick" and experienced "shaking, voimting, [sic] and stomach cramps." *Id.* at 6. In her final claim, Plaintiff contends that her doctor at DGH, "K. O'Brien," failed to provide an adequate course of treatment.[2] *Id.* In her request for relief, Plaintiff seeks

---

[1] C/O Trujillo is not named as a defendant in this case. *See* [#9] at 1.

[2] Defendant K. O'Brien was previously dismissed from this case pursuant to Fed. R. Civ. P. 4(m) based on Plaintiff's failure to timely effect service. *See* [#22]. Plaintiff refers to the alleged conduct of K. O'Brien in her third claim for relief, along with her allegations against Defendant Cirbo. *See* [#9] at 6. Due to K. O'Brien's prior dismissal, the Court will not consider the alleged actions

compensatory damages in the amount of $5,000,000 for "mental anguish and pain suffering [sic]" and $2,000,000 for "failure to act negligence [sic]," along with payment for "all rehabilitate's [sic] cost" and any future medical treatment that may be required.  *Id.* at 8.

The Court summarizes the factual allegations supporting Plaintiff's claims as follows. On September 5, 2009, Plaintiff allegedly fell while mopping the prison dish room floor.[3] *Id.* at 3.  The fall occurred after Plaintiff allegedly "lost [her] footing due to [her] boots being two size [sic] to [sic] big."[4]  *Id.*  Plaintiff fell on her back and hit her head on the floor.  *Id.* Because the CDOC medical staff did not have a backboard or neck brace immediately available, Plaintiff recounts that she remained on the floor for forty-five minutes to an hour. *Id.*  Then, Plaintiff was transported to DGH, where she allegedly remained strapped to a backboard for seven and a half hours.  *Id.* at 4.

As stated, Plaintiff was accompanied by C/O Trujillo while at the hospital.  *Id.* at 4. Throughout the duration of her time there, Plaintiff repeatedly requested that C/O Trujillo call for a nurse to bring a bedpan.  *Id.*  Plaintiff could not reach the call button herself because she was strapped to a backboard.  *Id.*  Additionally, Plaintiff contends that the hospital staff did not come into Plaintiff's room to check on her while she remained on the backboard.  *Id.*  Plaintiff attests that she never received a bedpan, or assistance from the hospital staff.  *Id.*  As a result, Plaintiff allegedly had to "urinate on [herself] causing a[n]

---

of K. O'Brien when evaluating Plaintiff's third claim for relief against Defendant Cirbo.

[3] For the purposes of resolving the Motion at issue, the Court takes as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Complaint. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[4] Plaintiff allegedly complained to the CDOC staff about the size of the boots when they were issued to her on January 22, 2009.  [#9] at 3.  Despite her protest, Plaintiff contends that she was never issued properly fitting boots, although she avers  that "Lt. Burt conveyed to me that 'we have been trying to get D.O.C. to give us proper footwear (boots) for you ladies.'"  *Id.* at 5.

overwhelming feeling of embarrassment and humiliation." *Id.* Furthermore, Plaintiff alleges that she lay in "excruicate [sic] pain" in "stinky wet clothes" for seven and a half hours without any attention from the hospital staff. *Id.* at 6.  Plaintiff contends that throughout this time, the doctor "failed to treat" her. *Id.* at 2, 6.

Plaintiff's allegations against Defendant Reilly also relate to an alleged lack of adequate medical treatment. *See id.* at 5.  After her fall, Plaintiff asserts that she submitted numerous "kites" to Defendant Reilly, the CDOC medical provider. *Id.*  In these "kites," Plaintiff asked that Defendant Reilly add certain medical codes to Plaintiff's CDOC computer records. *Id.*  Plaintiff believes that these codes were necessary to allow her to avoid work assignments that might aggravate her head injury. *Id.*  Despite her protest, Plaintiff states that her only work restriction after the fall dictated that she should not use "heavy machinery." *Id.*  This code was allegedly entered into the computer system by "Noonan," who "wasn't aware of [Plaintiff's] needs" and did not have Plaintiff's discharge note from the hospital.[5] *Id.*  Additionally, Plaintiff contends that Defendant Reilly did not provide adequate follow-up treatment for her injury, despite Plaintiff's complaints that she continued to experience dizziness and back pain. *Id.*

Plaintiff's allegations against Defendant Cirbo arise from one incident in which Defendant Cirbo ordered Plaintiff to work in the dish room where her fall occurred, despite Plaintiff's "fear" of returning to work in that area. *Id.* at 6.  Returning to the dish room allegedly caused Plaintiff to become "sick" and experience "shaking, voimting [sic] and stomach cramps." *Id.*

In response to Plaintiff's Complaint, Defendants Reilly and Cirbo, the only remaining

---

[5] Plaintiff has not provided any additional identifying information for "Noonan," and has not named this individual as a defendant in this case. *See* [#9] at 1.

Defendants, filed the Motion at issue. *See* [#24]. First, Defendants assert that Plaintiff's claims are barred by Eleventh Amendment immunity to the extent that she asserts claims for money damages against the Defendants in their official capacities. *Id.* at 4. Second, Defendants argue that Plaintiff has not alleged the requisite personal participation to sustain her first claim for relief against either Defendant Reilly or Defendant Cirbo pursuant to 42 U.S.C. § 1983. *Id.* at 5. Third, Defendants contend that Plaintiff fails to state a claim of an Eighth Amendment violation, and that she has failed to allege any physical injury associated with her claims, as required by the Prison Litigation Reform Act ("PLRA"). *Id.* at 6, 10. Finally, Defendants assert that they are entitled to qualified immunity. *Id.* at 12.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ. P. 12(b)(6) (A complaint may be dismissed for "failure to state a claim upon which relief can be granted."). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570); *see also Shero*, 510 F.3d at 1200 ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the

plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not shown that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 129 S. Ct. at 1950 (quotation marks and citation omitted).

When considering Plaintiff's Complaint [#9] and Response [#29], the Court is mindful that it must construe the filings of a *pro se* litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, *pro se* litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

Although a motion to dismiss should ordinarily be decided upon the allegations contained within the four corners of the complaint, *Mobley*, 40 F.3d at 340,  "[c]ourts have

broad discretion in determining whether or not to accept materials beyond the pleadings." *Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998). Fed. R. Civ. P. 12(d) requires that, on a motion brought pursuant to Rule 12(b)(6) or 12(c), if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Unless dismissal can be justified without considering the outside materials, the failure to follow Rule 12(d)'s mandate may result in reversible error. *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1216 (10th Cir. 2007). "However, notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Id.* at 1215 (citation omitted).

### III.  Analysis

#### A. Personal Participation

To the extent that Plaintiff's claims against Defendant Reilly and Defendant Cirbo are brought against them in their individual capacities, Defendants argue for dismissal based on lack of personal participation. [#24] at 5. Specifically, Defendants contend that Plaintiff's first claim should be dismissed because Plaintiff fails to allege the requisite personal participation of both Defendants. *Id.*

"Personal participation is an essential allegation in a Section 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). Therefore, "individual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)). A defendant was

personally involved in an alleged constitutional violation only if there is an "affirmative link" between his conduct and the alleged violation.  *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).

Plaintiff discusses the alleged conduct of several individual actors in addition to Defendant Reilly and Defendant Cirbo throughout her Complaint.  Two of these individuals, C/O Trujillo and "Noonan," have never been identified as defendants.  *See* [#2] at 1; [#3] at 1; [#9] at 1.  Additionally, Plaintiff's references to DGH staff do not identify any specific actors other than "K. O'Brien," who has been dismissed.  *See* [#9] at 4, 6; [#31].

Plaintiff makes no allegations related to the conduct of either Defendant Reilly or Defendant Cirbo in her first claim for relief.  *Id.* at 4.  The essence of the first claim relates to non-party C/O Trujillo's conduct when he or she accompanied Plaintiff to the hospital. *See id.* at 4.  Additionally, Plaintiff generally refers to the "medical staff" at DGH, and alleges that she remained unattended for several hours while constrained on a backboard. *Id.*  Neither Defendant Reilly nor Defendant Cirbo are mentioned.  *See id.*  Accordingly, Plaintiff has failed to allege facts sufficient to identify an affirmative link between any alleged constitutional violation in her first claim and either of the two named Defendants. Because 42 U.S.C. § 1983 mandates a showing of personal participation by the named defendants, the Court recommends that Plaintiff's first claim for relief be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

### B.  Qualified Immunity

Regarding Plaintiff's second and third claims, and based on the statements in Plaintiff's Complaint, it is unclear whether Plaintiff sues Defendant Reilly and Defendant Cirbo in their individual or official capacities.  *See* [#9] at 2.  In light of this ambiguity, the

Court will proceed on the assumption that Plaintiff intends to bring suit against the Defendants in both capacities.

Defendants assert qualified immunity from Plaintiff's claims against them in their individual capacities.   Thus, the Court will first examine whether Plaintiff's Complaint passes muster pursuant to Fed. R. Civ. P. 12(b)(6).   *Butler v. Rio Rancho Public Schools Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003) ("Since the [defendant] raised the defense of qualified immunity in its motion to dismiss, we first examine whether the [plaintiffs] asserted a violation of federal law in their complaint.").

Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982).   "[G]overnment officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818.   Defendants argue that because Plaintiff has not demonstrated a plausible violation of her Eighth Amendment constitutional right to adequate medical care, they are entitled to qualified immunity.   *See* [#24] at 13.

A government official is entitled to qualified immunity from liability for civil damages when his or her allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position.   *Harlow*, 457 U.S. at 818 (stating that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known"); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although qualified immunity determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate).  The Supreme Court has stated that "[f]or executive officials in general . . . our cases make plain that qualified immunity represents the norm."  *Id.* at 807.  Thus, a government official is entitled to qualified immunity in "[a]ll but the most exceptional cases." *Harris v. Bd. of Educ. of the City of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

Construing the allegations liberally in Plaintiff's favor as it must, and as further described below, the Court recommends finding that Plaintiff has stated a plausible violation of her Eighth Amendment rights in her second claim for relief against Defendant Reilly.  Because such rights were clearly established at the time of the alleged violations in 2010, and a reasonable prison official should have known of the rights, the Court recommends finding that Defendant Reilly is not entitled to qualified immunity at this stage of the proceeding.  However, the Court recommends finding that Defendant Cirbo is entitled to qualified immunity, and Plaintiff's third claim for relief should be dismissed.  The Court emphasizes that this Recommendation does not limit the ability of Defendant Reilly to resubmit the question of qualified immunity to the Court at a later time, if appropriate.

### C. Eighth Amendment

The Court evaluates Plaintiff's second and third claims for relief to the extent that they are brought against Defendant Reilly and Defendant Cirbo in their individual capacities.  In her second claim, Plaintiff contends that Defendant Reilly refused to respond to Plaintiff's requests to enter certain computer codes into CDOC's computer database, and failed to provide adequate follow-up treatment despite Plaintiff's repeated complaints of

"dizziness" and "back pain." [#9] at 5. In her third claim, Plaintiff alleges that Defendant Cirbo's orders requiring Plaintiff to work in the dish room despite her fear of returning to work in that area resulted in her experiencing "shaking, voimting, [sic] and stomach cramps." *Id.* at 6. Again, although Plaintiff does not explicitly identify the Eighth Amendment as the legal basis for these claims in her Complaint, it appears that Plaintiff intends all of her claims, which relate to her fall and subsequent medical treatment, to constitute allegations of Eighth Amendment violations by the Defendants. See *id.* at 4; *see also* [#29] at 5 ("[Defendant Cirbo] act [sic] with deliberate indifference or reckless disregard for my safety"). The Court interprets Plaintiff's contentions against Defendant Reilly to constitute a claim for deliberate indifference as to a serious medical need, and her contentions against Defendant Cirbo to constitute a claim alleging a failure to protect.

### 1.    Defendant Reilly

Addressing Plaintiff's claim for relief against Defendant Reilly first, the Court finds that Plaintiff has plausibly pled sufficient facts to withstand the Motion to Dismiss. Plaintiff alleges that Defendant Reilly's failure to respond to her "kites" requesting the entry of certain codes into CDOC's computer system, as well as to her requests for medical treatment to address her continuing dizziness and back pain after her fall, rises to the level of a constitutional violation. [#9] at 5. In response, Defendants argue that Plaintiff's injury is not sufficiently serious to support a claim under the first, objective element of the Eighth Amendment deliberate indifference analysis. [#24] at 8.

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. Punishments which "involve the unnecessary and wanton infliction of pain" violate this provision. *Gregg v.*

*Georgia*, 428 U.S. 153, 173 (1976).  Because "[a]n inmate must rely on prison authorities to treat [her] medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."  *Id.* at 104 (quoting *Gregg*, 428 U.S. at 173).  To prove a claim of deliberate indifference, a prisoner must establish that (1) she was deprived of a medical need that is, objectively, "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and (2) the defendant knew of and disregarded "an excessive risk to [the prisoner's] health or safety." *Id.* at 837.

Importantly, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Thus, "a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment."  *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

"A medical need is sufficiently serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Ramos*, 639 F.2d at 575 (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.C.N.H. 1977)).  Plaintiff alleges that after she fell in the dish room, CDOC staff transported her on a backboard to DGH, where she remained for several hours.  [#9] at 3.  Additionally, she contends that C/O Trujillo, who is presumably a CDOC staff member, accompanied her throughout the duration of her stay at DGH.  *Id.* at 4.  Plaintiff further alludes to a "discharge note from the hospital" in her

12

Complaint. *Id.* at 5.  These allegations plausibly demonstrate that CDOC staff were on notice that Plaintiff had sustained an obvious and sufficiently serious need for medical treatment after her fall in the dish room.  Thus, the Court recommends finding that Plaintiff plausibly pleads the objective element required for an Eighth Amendment claim.

Additionally, Plaintiff has also pled sufficient facts to state a plausible claim that Defendant Reilly knew of, and deliberately disregarded, Plaintiff's need for medical treatment under the subjective element of the deliberative indifference test.  The subjective element may be demonstrated with a showing that Defendant Reilly "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety" or acted with a sufficiently culpable state of mind.  *See Farmer*, 511 U.S. at 837.  A defendant knew of and disregarded an excessive risk to a prisoner's health or safety when he or she was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *and* he or she actually drew that inference.  *Id.*  Furthermore, "[d]eliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment."  *Ramos*, 639 F.2d at 575 (citation omitted). Pursuant to this standard, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.* at 842.

In her Complaint, Plaintiff states that she submitted several "kites," or requests for medical treatment.  [#9] at 5.  Plaintiff contends that all of her "kite" requests, including those requesting follow-up medical treatment, were ignored by Defendant Reilly, despite

the fact that "[she] repeatedly complained about dizziness continue [sic] back pain." *Id.* In her Response, Plaintiff attached copies of two of the "kites" referred to in her Complaint.[6] [#29] at 3. One of these "kites," dated September 16, 2010, asks for medical restrictions to be updated in the CDOC computer system. *Id.* The other "kite," dated February 15, 2010, states "I'm still having dizziness back spasm is there a reason why cannot get any help [sic]."[7] *Id.* Defendants counter, arguing that Plaintiff has not adequately demonstrated that Defendant Reilly acted with deliberate indifference to Plaintiff's alleged medical condition. [#24] at 9.

Plaintiff has stated allegations to support her claim that Defendant Reilly knew of and disregarded a substantial risk of serious harm to Plaintiff due to a failure to treat her head injury. Plaintiff has alleged facts that, if proven, demonstrate that the symptoms of her head injury persisted after her initial visit to DGH on the day she fell. *See* [#9] at 5. She additionally asserts that although she alerted Defendant Reilly to the existence of her

---

[6] Although a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should ordinarily be decided based on the allegations contained within the complaint, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). In this case, Plaintiff included copies of two of the "kites" requesting medical treatment in her Response. [#29] at 3. Plaintiff referred to these "kites" in her Complaint, and they are central to her deliberate indifference claim against Defendant Reilly. Furthermore, Defendants did not contest the authenticity of these "kites" in their Reply [#30]. Accordingly, the Court finds it appropriate to consider the "kites" in Plaintiff's Response when evaluating the merits of the Motion at issue.

[7] As explained, Plaintiff's Response includes copies of "two of many kite's [sic]" that she allegedly submitted to Defendant Reilly. *See* [#29] at 3-4. These copies appear to indicate that appointments were scheduled in response to the submission of these "kites." For example, the February 15, 2010 "kite" requesting medical treatment indicates that "advised apt is scheduled" [sic] where the "action taken" is to be recorded by CDOC medical staff. *Id.* at 3. Additionally, the September 16, 2010 "kite" also indicates that an appointment was scheduled in response to that request. *Id.* However, Plaintiff maintains in her Complaint that she was not seen by the medical staff, despite her requests for treatment, and the "kites" do not indicate whether Defendant Reilly authored the notes on the "kites" indicating that appointments were scheduled. [#9] at 5.

continuing symptoms, she did not receive follow-up treatment.  *See id.*; [#29] at 3.  These facts, if proven, could plausibly demonstrate that Defendant Reilly failed to facilitate the treatment of Plaintiff's head injury, despite her knowledge that Plaintiff  was suffering from dizziness and back spasms after a traumatic blow to the head.

Although a prisoner does not present a valid claim of deliberate indifference simply because she was denied "a particular course of treatment" that she desired, *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006), and "a prison doctor remains free to exercise his or her independent professional judgment," *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997), Plaintiff's claim does not concern a difference of opinion in the type of treatment she received.  Instead, Plaintiff argues that she received "*no* follow-up treatment," despite the many requests that she submitted to Defendant Reilly.  [#9] at 5. At this early stage of the proceedings and prior to any discovery, the Court cannot conclude that Plaintiff has failed to allege enough facts to state a plausible claim for relief under the Eighth Amendment.  Thus, the Court recommends finding that, in her second claim, Plaintiff has plausibly pled the objective and subjective elements required for an Eighth Amendment claim.

Accordingly, the Court recommends that Defendant Reilly's assertion of qualified immunity as to Plaintiff's second claim for relief be denied.  The law governing Eighth Amendment deliberate indifference claims has continuously evolved since at least 1976 (issuance of *Estelle* decision), and the obligations of prison officials pursuant to the Eighth Amendment would have been known to a reasonable prison official in 2010, which is the time relevant to Plaintiff's allegations.  Because Plaintiff pleads a plausible violation of the Eighth Amendment by Defendant Reilly, and the law was well-settled at the time of the

alleged violation, the Court recommends finding that Defendant Reilly is not entitled to qualified immunity at this stage of the proceeding.

### 2.   Defendant Cirbo

In her third claim for relief, Plaintiff alleges that on February 2, 2010, Defendant Cirbo ordered Plaintiff to work in the dish room where her fall had occurred.  [#9] at 6. Plaintiff contends that she became ill when she returned to the dish room, and experienced "shaking, voimting, [sic] and stomach cramps" due to her "fear" of working in that room. *Id.*  Plaintiff avers that requiring her to return to the dish room despite her fear constituted "deliberate indifference or reckless disregard for [Plaintiff's] safety." [#29] at 5.  The Court construes Plaintiff's contentions against Defendant Cirbo to allege a claim for failure to protect in violation of the Eighth Amendment.

To succeed on an Eighth Amendment claim for failure to protect, a plaintiff must demonstrate that objectively, she is incarcerated under conditions that pose a substantial risk of serious harm, and that subjectively, prison officials were deliberately indifferent to her safety.  *See, e.g., Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006).  "Mere negligence does not constitute deliberate indifference; deliberate indifference is equivalent to recklessness in this context."  *Id.* (quoting *Verdicia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003)).  Thus, "the official must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996).

Under the objective prong, the Court must first consider whether the conditions of incarceration complained of are "sufficiently serious," *i.e.*, whether the "conditions pos[e] a substantial risk of serious harm."  *Id.* at 1205.  In order to satisfy this element, "plaintiff's

16

allegations must furnish more than a conclusory claim of being afraid." *Id.* (affirming dismissal of plaintiffs' failure to protect claim based on allegations that plaintiffs were constantly in fear of attacks by other inmates who might have discovered their sex offender status); *see also Lesley v. Whetzel*, 110 F. App'x 851, 853 (10th Cir. 2004) (unpublished opinion) (affirming dismissal of plaintiff's failure to protect claim based on a fear of incarceration in the same cell unit as an inmate who had previously attacked him).

In this case, Plaintiff has not alleged sufficient facts to demonstrate that she was exposed to a substantial risk of serious bodily harm as a result of Defendant Cirbo's orders. Plaintiff contends that Defendant Cirbo ordered her to work in the dish room despite Plaintiff's insistence that she had "a fear" of returning to that room.  [#9] at 6.  Beyond this general contention of fear, Plaintiff has not alleged any facts to demonstrate that a risk of serious harm awaited her in the dish room.  Additionally, Plaintiff's fear of the dish room based on her past fall is entirely speculative, and does not  present a credible contention that further serious harm might occur there.  Because such conclusory claims of fear are not sufficient to satisfy the objective prong of the analysis, Plaintiff's claim against Defendant Cirbo alleging failure to protect in violation of the Eighth Amendment must fail. Because Plaintiff has not pled a plausible violation of the Eighth Amendment by Defendant Cirbo, the Court recommends finding that Defendant Cirbo is entitled to qualified immunity. Accordingly, the Court recommends that Plaintiff's third claim against Defendant Cirbo be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

### D. Physical Injury

Defendants argue that the PLRA bars Plaintiff's second and third claims for relief because Plaintiff has failed to allege any associated physical injury.  [#24] at 10.

Consequently, Defendants aver that Plaintiff's request for relief in the form of compensatory damages of $2,000,000 for "failure to act negligence," and $5,000,000 for "mental anguish and pain suffering" must be dismissed. *Id.* at 11-12; [#9] at 8. Because the Court has found that Plaintiff's third claim should be dismissed for failure to allege a plausible Eighth Amendment violation, the Court will address Plaintiff's request for relief only in terms of Plaintiff's second claim.

42 U.S.C. § 1997e(e) provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Pursuant to Section 1997e(e), Plaintiff's "suit cannot stand unless [she] has suffered a physical injury in addition to mental or emotional harms." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999); *see also Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (holding that § 1997e(e) bars compensatory "damages for mental and emotional injuries in the absence of physical injury"). The limitations under § 1997e(e) apply only to suits for damages. Therefore, "§ 1997e(e) does not affect actions for declaratory or injunctive relief." *Perkins*, 165 F.3d at 807-08; *Searles,* 251 F.3d at 876.

The Tenth Circuit has provided little guidance for district courts on the issue of what constitutes a "physical injury" when a plaintiff complains of a lack of sufficient medical treatment. By way of example, in *Murray v. Edwards County Sheriff's Dept.*, 248 F. App'x 993, 996-97 (10th Cir. 2007), the Tenth Circuit assumed, without deciding, that a plaintiff's headaches and tooth pain were sufficient to satisfy the physical injury requirement where

the plaintiff's allegations related to a lack of dental care and continuous lighting in his cell.[8]

Additionally, it is clear that while a plaintiff's alleged physical injury "need not be substantial"

to satisfy the § 1997e(e) requirement, it must be more than *de minimis*. *Clifton v. Eubank*,

418 F. Supp. 2d 1243, 1245 (D. Colo. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 536 (3rd

Cir. 2003)). "Physical pain, standing alone, is a de minimis injury . . . and, accordingly, fails

to overcome the PLRA's bar; but, when paired with allegations of physical effects, physical

pain may support a claim under the PLRA." *Id.* at 1246 (citing *Mata v. Saiz*, 427 F.3d 745,

755 (10th Cir. 2005); *Sealock v. Colorado,* 218 F.3d 1205, 1210 (10th Cir. 2000)).

In her second claim for relief, Plaintiff contends that she experienced dizziness and

continuing back pain throughout the time that Defendant Reilly refused to respond to her

requests for medical treatment.  [#9] at 5.  Accepting Plaintiff's allegations as true, as the

Court must, her contentions of physical injury go beyond mere physical pain resulting from

her alleged lack of medical treatment.  Again, on the face of her Complaint and in light of

her Response, it appears that the physical effect of her injuries manifested in her continuing

dizziness.  These allegations are sufficient to plausibly state a claim for physical injury at

this  early  stage  of  litigation.   Accordingly,  the  Court  respectfully  recommends  that

Defendants' Motion to Dismiss be denied with respect to Plaintiff's requested monetary

damages related to her second claim for relief against Defendant Reilly.

### E.  Eleventh Amendment Immunity

To the extent that Plaintiff brings her claims against the Defendants in their official

capacities, Defendants assert an entitlement to Eleventh Amendment immunity.  [#24] at

---

[8] Despite the *Murray* court's finding that the plaintiff had satisfied the physical injury requirement, the court affirmed summary judgment on the claims related to the alleged headaches and tooth pain on different grounds.  *Murray*, 248 F. App'x at 1002.

4.

The doctrine of Eleventh Amendment sovereign immunity bars "a citizen from suing his own State under the federal-question head of [subject-matter] jurisdiction." *Alden v. Maine*, 527 U.S. 706, 727 (1999) (citing *Hans v. Louisiana*, 134 U.S. 1, 14-15 (1890)). The doctrine applies whether the relief sought is legal or equitable, *Papasan v. Allain*, 478 U.S. 265, 276 (1986), and it "confers total immunity from suit, not merely a defense to liability," *Ambus v. Granite Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993). The Court lacks subject-matter jurisdiction to adjudicate an action brought by a citizen of Colorado against the state of Colorado, its agencies, or its officials in their official capacity, in the absence of an explicit waiver. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).

In this case, Plaintiff's suit against CDOC employee defendants in their official capacities constitutes a suit against their employer, CDOC. *See Blake v. Webster*, No. 10-cv-0162-DME-CBS, 2011 WL 7485055, at *3 (D. Colo. Dec. 13, 2011) (unpublished opinion) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)) (suit against a state official in his or her official capacity is treated as a suit against the state). CDOC is an agency immune from suit under the doctrine of Eleventh Amendment immunity. *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011).

Plaintiff invoked the Court's subject matter jurisdiction pursuant to 42 U.S.C. § 1983 and requested relief only in the form of monetary damages. [#9] at 3, 8. The doctrine of sovereign immunity applies to 42 U.S.C. § 1983 actions. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Thus, to the extent that Plaintiff requests monetary damages from Defendants in their official capacities, her claims are barred. *See Henderson v. Jones*, 378 F. App'x 808, 809-10 (10th Cir. 2010) ("[T]o the extent that [plaintiff] has raised claims for monetary

damages against the defendants in their official capacities, such claims are barred by the Eleventh Amendment."). Accordingly, the Court recommends that Plaintiff's claims against Defendants in their official capacities seeking monetary damages be dismissed without prejudice for lack of subject matter jurisdiction due to Eleventh Amendment immunity. *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010) ("Generally, a dismissal for lack of subject matter jurisdiction is without prejudice and does not have a preclusive effect."); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ( "[W]here the district court dismisses an action for lack of jurisdiction ... the dismissal must be without prejudice.").

## F. Dismissal with Prejudice

The dismissal of an action "pursuant to Rule 12(b)(6) is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992); *accord Brierly v. Schoenfeld*, 781 F.2d 838 (10th Cir. 1986) (affirming a district court decision to dismiss with prejudice an action brought under 42 U.S.C. § 1983); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice"); *Tepper v. Van Dam*, 974 F.2d 1345, 1992 WL 219037, at *3-4 (10th Cir. 1992) (unpublished table decision) (relying on *Okusami*, *Brierly*, and *Cortec* to affirm dismissal of an action with prejudice). However, due to heightened concerns when the plaintiff is proceeding *pro se*, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *see also Brereton*, 434 F.3d at 1219 ("A dismissal with prejudice is appropriate

where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.") (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997))). Even as courts are careful to protect the rights of *pro se* plaintiffs, they typically find that granting the opportunity to amend would be futile. *See, e.g., Arocho v. Nafziger*, 367 F. App'x 942, 955 (10th Cir. 2010) (describing a set of circumstances under which giving a plaintiff an opportunity to amend his complaint would not be futile as "unique"); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise *substantial* issues" (emphasis added)); *but see Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("[O]rdinarily the dismissal of a *pro se* claim under Rule 12(b)(6) should be without prejudice, and a careful judge will explain the pleading's deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint." (citations omitted)).

Here, no amendment to Plaintiff's Complaint would change the fact that her first claim for relief does not allege personal participation by either Defendant Reilly or Defendant Cirbo, and accordingly, dismissal with prejudice is appropriate.  In her Response, Plaintiff did not provide any further clarification as to how her first claim for relief was related to the actions of either Defendant.  *See* [#29].  Therefore, the Court infers that Plaintiff simply has nothing to add toward the establishment of personal participation, and leave to amend her first claim would be futile.  As to Plaintiff's third claim for relief against Defendant Cirbo, the Court finds that no amendment could overcome the established law dictating that allegations of fear alone are insufficient to sustain a failure to protect claim. Accordingly, no amendment could alter Defendant Cirbo's entitlement to qualified immunity,

and Plaintiff's third claim should be dismissed with prejudice.

## IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss [#24] be **GRANTED IN PART** and **DENIED IN PART**.

The Court FURTHER **RECOMMENDS** that Plaintiff's first and third claims for relief be **DISMISSED WITH PREJUDICE**, and Defendant Cirbo be dropped from this action.

The Court FURTHER **RECOMMENDS** that Plaintiff's second claim for relief against Defendant Reilly in her individual capacity be permitted to proceed.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

IT IS FURTHER **ORDERED** that a Preliminary Scheduling Conference is set for **June 26, 2012**, at **11:00 a.m.** in Courtroom C-204, Second Floor, Byron G. Rogers United States Courthouse, 1929 Stout Street, Denver, Colorado. The parties need not comply with the requirements of Fed. R. Civ. P. 16 and 26(a)(1) and D.C. COLO.LCivR. 16.1 and 16.2.

The purpose of the initial conference is to consider the nature and status of the case, the timing for filing of any motions or responses, and what discovery, if any, will be needed. Plaintiff and her case manager shall contact the Court at (303) 335-2770 on the above date and time in order to participate.

IT IS FURTHER **ORDERED** that the Clerk's Office shall electronically mail a copy of this Minute Order to the legal assistant for the Department of Corrections at the following address: service_of_process@doc.state.co.us. and shall mail a courtesy copy to the case manager for Plaintiff at her facility.

Dated:  April 24, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge